# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLFLEX USA, INC., <br><br>      Plaintiff, <br><br> v. <br><br> AVID IDENTIFICATION SYSTEMS, INC., <br><br>      Defendant, <br> _____ | CASE NO. EDCV-06-1109-SGL (OPx) <br><br> **ORDER SANCTIONING AVID AND FISH & RICHARDSON; ORDER RE; AMOUNT OF SANCTIONS** |

The Court has before it the parties' and counsels' responses to the Court's Order to Show Cause issued on October 8, 2009. The contents of the OSC raise serious concerns about the integrity of the adversary process in this case, concerns that have not been sufficiently satisfied, but for which the record, as it presently exists, is insufficient to make a finding regarding whether sanctions are appropriate.

The Court makes the following findings of fact (drawn largely from those previously articulated in the October 8, 2009, OSC, which have not been refuted):

This is a declaratory judgment action filed by Allflex in October 6, 2006, seeking a declaration that its accused device did not infringe five patents held by Avid. After a series of orders issued by this Court, only two of the original five Avid-held patents-in-suit were left in this case: The '409 patent and the '017 patent (the

declaratory relief claim concerning the three other patents having been dismissed for lack of jurisdiction because of Avid's covenant not to sue on those patents against Allflex).

After receipt from each side of a pre-<u>Markman</u> tutorial CD and extensive <u>Markman</u> briefs, the Court conducted a three-hour <u>Markman</u> hearing on the two patents-in-issue on July 14, 2008 (the <u>Markman</u> hearing was earlier scheduled to take place on June 9, 2008, but was rescheduled by the Court to July 14, but that fact was inadvertently not disclosed to the parties, who appeared in the courtroom on June 9 only to be informed that the hearing would not take place that day).

As the Court was about to render its <u>Markman</u> order (literally within a week of doing so), Avid's counsel (Kirkland & Ellis) disclosed to the Court on March 16, 2009, that both remaining patents-in-suit had been undergoing re-examination (initiated by an unknown third-party, but not Allflex) before the Patent and Trademark Office ("PTO") for the past two years.

Specifically, a request to institute re-examination proceedings was brought before the PTO with respect to the '409 patent on April 30, 2007, with the PTO granting the request a few weeks later on June 14, 2007. (<u>See</u> Notice of Reexamination at 2). The PTO eventually issued a Final Office Action upholding the '409 patent on January 13, 2009, two months before the disclosure of the re-examination proceeding was made to Allflex or the Court. (<u>See</u> <u>id</u>).

With respect to Avid and its attorneys' knowledge of that re-examination request of the '409 patent and subsequent re-examination proceedings, these are the established facts:

On May 4, 2007, Avid's patent counsel, who appears on Avid's behalf on matters before the PTO, Mr. David Abel at DLA Piper, informed Avid of the '409 patent PTO re-examination request. DLA Piper was then retained by Avid to represent it in connection with the '409 re-examination.

On the same day that Avid first learned of the '409 re-examination request (May 4, 2007), Kirkland & Ellis filed with the Court a Notice of Appearance as co-counsel for Avid in the action before this Court because, as later revealed, Avid's initial counsel, Fish & Richardson, discovered it had a conflict of interest in continuing to represent Avid in the matter.  Fish & Richardson, however, remained as counsel of record, and continued to perform legal services for Avid in connection with this matter for the next two months.

Three days later, on May 7, 2007, Avid informed its initial counsel in this matter, Fish & Richardson, of the request for a re-examination of the '409 patent before the PTO.  In the three days that followed, from May 7 to May 10, "there were numerous electronic mail communications between Fish [& Richardson] and Avid regarding 'the re-examination of the '409 patent.'"  (Discovery Referee's R&R at 2, lines 22-24).  When Avid informed Fish & Richardson of the '409 re-examination, it did not likewise disclose the request's existence to its newly retained co-counsel, Kirkland & Ellis.  Instead, Avid expected that Fish & Richardson would so inform Kirkland & Ellis during the transition of the case (and related files) from one firm to the other.

As far as the '017 patent is concerned, a request to institute re-examination proceedings was brought before the PTO on May 31, 2007, with the PTO eventually granting the request on June 14, 2007, the same day the agency granted the third-party's request to re-exam the '409 patent.  The re-examination proceedings were still on-going as of March 16, 2009, when Avid's present counsel (Kirkland & Ellis) notified the Court about the PTO re-examination proceedings.  Subsequently, the PTO issued a Final Office action rejecting the '017 patent in light of certain prior art, prior art that apparently had not been disclosed to the PTO during the re-examination proceedings of the '409 patent; Avid has since appealed the Final Office action to the PTO Board of Appeals and the matter is still on-going at this time.

As far as the extent of the knowledge of both Avid and its counsel about the '017 re-examination proceedings is concerned, this is what has been established thus far:

Counsel at DLA Piper notified Avid of the request for a re-examination of the '017 patent by way of an email on June 7, 2007, and the firm was then retained by Avid to represent it (as had happened with the '409 patent) before the PTO in connection with the same.  Avid in turn notified Fish & Richardson, its co-counsel in the Allflex matter, sometime in June, 2007, of the '017 re-examination.

During the course of the re-examination for both patents-in-suit, DLA Piper periodically sent to Avid documents related to the re-examinations "at or about the [same] time they were filed with or received from the [PTO]."  (Discovery Referee's R&R at 3, lines 2-4).  Those documents were then stored in file cabinets on site at Avid's premises, where they remained until discovered by Kirkland & Ellis in 2009. At no point did Avid ever forward or otherwise call Kirkland & Ellis' attention to the re-examination documents that were filing its files.

On July 6, 2007, Fish & Richardson filed its request for substitution of counsel and on, July 20, 2007, the Court granted the application to substitute Kirkland & Ellis for Fish & Richardson as Avid's sole counsel of record in this case. At no point up to and including when relieved in this matter did Fish & Richardson provide the Court or Allflex with notice (in any form) of the re-examination proceedings.

Insofar as communication of the re-examination proceedings to the incoming counsel for Avid, it is significant that Fish & Richardson and its attorneys, including Mr. John Thornburgh, Brian Wacter and Michael Amon, were all involved in transferring the case files to Kirkland & Ellis.  Kirkland & Ellis asserts that it (as opposed to its client Avid or prior counsel Fish & Richardson) did not learn of the re-examination proceedings until during one of its "periodic sweeps" of Avid's files to locate responsive documents on March 10, 2009.  The March 10, 2009, "document

4

sweep" (for which Kirkland & Ellis had in the past was "given full access to the files and access to the server and computers") was either the fifth or sixth one Kirkland & Ellis had performed of Avid's files since coming onboard in this matter. (Discovery Referee's R&R at 6, lines 10-13). Although no 30(b)(6) witness from Kirkland & Ellis has been deposed on this point, Kirkland & Ellis' attorneys have repeatedly made these same representations in open court proceedings before this Court since the disclosure was made and in papers they have subsequently filed with the Court.

During depositions of Fish & Richardson's 30(b)(6) witness and those of Mr. Wacter and Mr. Amon, none could "recall" or "remember" the firm (or themselves personally) informing Kirkland & Ellis of the re-examination proceedings.

Avid's Rule 30(b)(6) witnesses have repeatedly made the unequivocal assertion that they told Fish & Richardson about the re-examinations (a point which Fish & Richardson acknowledges), and assumed Fish & Richardson would thereafter tell Kirkland & Ellis about it, but apparently took no action to confirm that was indeed the case.

Also occurring both shortly before and during this 2007 period was activity related to a document discovery request propounded by Allflex to Avid that has since proven to be central to the issues raised herein. On March 2, 2007, Allflex served its initial request for production of documents to Avid, requesting 115 categories of documents, the most notable being all documents referring to (including request no. 11 for "all documents relating to the prosecution histories" for) the '409 and '017 patents. On May 1, 2007, two days after the request for a re-examination of the '409 had been filed with the PTO, Avid (through its counsel Fish & Richardson) produced 115,941 documents responsive to Allflex's request, including documents related to the prosecution histories of the '409 and '017 patents during a prior litigation between Avid and another pet chip manufacturer in a case in Texas. Fish & Richardson's production of the Texas litigation documents came straight from its own files and the firm did not collect documents from Avid for

that production.  Nowhere in this initial production was it mentioned, made reference to, or was produced documents relating to the re-examination request then before the PTO (namely, the one concerning the '409 patent).

Later, on July 10, 2007, (more than two months after both Avid and Fish & Richardson were notified of the '409 re-examination, a little more than a month after both were notified of the '017 re-examination request, and a month after the PTO ordered the reexamination of both patents), Avid (again through its counsel Fish & Richardson) produced another 41,073 pages of documents to Allflex again regarding the Texas patent litigation, but nowhere in this second batch of documents was there any document produced concerning the then occurring re-examination proceedings involving the '409 and '017 patents.  Fish & Richardson's counsel later admitted during the status conference before this Court that, once the order of re-examination was handed down by the PTO, the fact thereof (and all documents related thereto, including the request itself) would have been considered responsive documents to Allflex's initial request for production of the '409 and '017 "prosecution history."

Kirkland & Ellis made document productions on behalf of Avid on at least five occasions after Fish & Richardson were relieved as counsel in the case, on August 31, 2007, September 17, 2007, October 27, 2008, December 5, 2008, and December 11, 2008 (the latter three all involving productions of documents and materials from the Texas litigation of the '409 and '017 patents).  Later in August, 2008, Allflex served a second request for the production of documents on Avid, but again in the production that followed (through Avid's then sole counsel Kirkland & Ellis) no documents regarding the re-examination proceedings were produced.

A.    Rule 26(e)

Rule 26(e) provides that "[a] party who has . . . responded to a . . . request for production . . . must supplement or correct its . . . response in a timely manner if the party learns that in some material respect the . . . response is incomplete or

incorrect . . . ."  As made plain by the text of the rule, the duty to supplement is a continuing one, that does not require the submission of a separate request for further production for the duty to be triggered.  See 6 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 26.131[3] at 26-583 to 26-584 (3rd ed. 2009) ("The duty to supplement and correct disclosures and responses is a continuing duty . . . .  For example, if after answering interrogatories, additional information becomes known to the answering party, this information must be disclosed and no additional interrogatories are necessary to obtain this information.  The duty to supplement does not depend on repeated requests by an adversary for updated information.  The fact that a party's attorney does not know about the updated information is irrelevant; the duty exists nevertheless" (citing Arthur v. Atkinson Freight Lines Corp., 164 F.R.D. 19, 20 (S.D.N.Y. 2005))).  Moreover, the authorities clearly show that a court can impose monetary sanctions against a party and/or their attorney for violations of Rule 26(e).  See Id. § 26.132[1] at 26-585 ("Although Rule 26(e) does not specifically mention sanctions, it is well established that courts may impose evidentiary and monetary sanctions for violation of the provision.  This authority derives from the inherent power of courts to oversee and manage discovery") .  Indeed, Rule 37(c) provides further authority to sanction such a violation of Rule 26(e).  See Rule 37(c)(providing that "[i]f a party fails to provide information . . . as required by Rule 26(e) . . . the court . . . may order payments of the reasonable expenses, including attorney's fees, caused by the failure").

Furthermore, that a party did not intend to fail to disclose this information is not determinative for establishing that a Rule 26(e) violation has occurred; instead a Rule 26(e) violation can be found even in the absence of intent "because a party is required to turn over materials that he or she is aware of, and those he or she should have been aware of."  6 MOORE'S FEDERAL PRACTICE § 26.131[3] at 26-584 to 26-585 (The duty to amend is not limited to circumstances in which the failure to amend constitutes a knowing concealment.  Rather, the duty to supplement and

correct disclosures and discovery applies whenever a party learns that its prior disclosures are in some material respect incomplete or incorrect").

B.    Fish & Richardson

Fish & Richardson's primary defense to being sanctioned for violating Rule 26(e) is that it never learned of the PTO's granting of the re-examination request of either patent until long after it was discharged as counsel of record in this case. The Court understands that one of Fish & Richardson's attorney (Mr. Wacter) has so testified as to when he made his own discovery of that fact, but Mr. Wacter and Mr. Amon's woefully inadequate preparation for their depositions, coupled with the fair inferences to be drawn from the documentary evidence, support a finding that attorneys at Fish & Richardson did indeed learn of the PTO's grant of the re-examination proceedings well before the July 10, 2007, final document production relating to the Texas patent litigation.

Fish & Richardson's privilege log reveals that Mr. Wacter e-mailed Avid regarding the '409 re-examination on June 16, 2007, two days after the PTO's order granting the re-examination. Moreover, Mr. Wacter disclaimed having any recollection of how Fish & Richardson learned of the '017 re-examination "in late June, 2007." Both pieces of evidence suggest that Fish & Richardson also learned of the PTO's grant of the re-examination request itself.

Mr. Wacter claimed that he could not recall the topic of his June 16, 2007, e-mail, which is not surprising given that neither he nor Mr. Amon reviewed any of the documents on Fish & Richardson's privilege log prior to being deposed, even though the Court specifically made a finding that there had been a waiver of the attorney-client privilege in its October 8, 2009, Order, as well as a subsequent order clarifying that particular point. (Depo. Wacter at 127 ("I didn't review. I collected documents off my computer that were relevant to the request") & at 128 ("I didn't review any documents to determine whether we had transferred anything related to a re-examination request in the 2007 time frame"); Depo. Amon at 50 ("Q: [I]n

8

attempting to refresh your recollection regarding this matter of great importance to your firm, you have not reviewed any of the documents identified on the privilege log that is Exhibit 33, correct?  A.  I have not.")).

Interestingly, Avid has stated that it learned of the '017 re-examination from Fish & Richardson, and the Fish & Richardson privilege log shows that Mr. Wacter e-mailed executives at Avid on June 29, 2007, regarding both the '409 and the '017 re-examinations.  Importantly, Fish & Richardson have denied communicating to DLA Piper during this period, leaving as the only means by which Fish & Richardson could have learned of the '017 re-examination a review of the PTO website, a process which would have also disclosed the grant of a re-examination of both patents.

Regardless of the strong inference created by the documentary evidence, the Court is not convinced of the pertinence of whether Fish & Richardson learned of the PTO grant of the re-examination requests as the trigger for their duty to supplement their document production responses to Allflex's discovery requests. The substance of Allflex's request was not limited to documents created during the actual prosecution of Avid's patents, but also those documents that may relate to said prosecution.  A request for re-examination, although not a part of the patent's prosecution history, was nonetheless something that would relate to those patent's prosecution history.

Because the requests for re-examinations themselves were responsive to the document requests, and because the documentary evidence strongly suggests that Fish & Richardson knew of the PTO's granting of the re-examination requests prior to performing the supplemental document production in July, 2008, and before their withdrawal from the case, the Court finds that Fish & Richardson's failure to so include the request and the PTO's order granting the same in that later document production was at best reckless, not substantially justified under the circumstances, and, hence, in violation of Rule 26(e).

None of Fish & Richardson's other excuses for failing to so supplement their earlier document productions have merit.  Their alleged lack of foresight that such re-examinations could impact the litigation of the present case is particularly disingenuous given the long and storied history the firm has had in the patent field, where courts have routinely stayed patent cases in their early stages when such re-examination proceedings take place.  *See Guthy-Renker Fitness, LLC v. ICON Health and Fitness, Inc.*, 1998 WL 670240 (C.D. Cal. 1998).  Fish & Richardson's excuse that they did not supplement because they suspected Allflex was the mysterious third-party behind the re-examination request would have more persuasive force if Fish & Richardson had done anything to investigate that conjecture.  They did not.  Finally, the firm's excuse that they had previously raised a public information objection to the particular document request from Allflex would likewise have more force to it if they had acted consistent with that objection.  Instead, and in spite of that objection, Fish & Richardson did produce to Allflex publicly available documents arising from the Texas patent litigation.

Accordingly, the Court finds that, under Rule 37(c), Fish & Richardson should be sanctioned for violating Rule 26(e) and 28 U.S.C. § 1927.  *See Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (finding of recklessness sufficient for sanction under section 1927).

C.    Avid

Avid's primary defense is that it assumed Fish & Richardson told Kirkland & Ellis about the re-examination proceedings, and that if the documents from the same were needed or responsive, Kirkland & Ellis (and Fish & Richardson during the time it was still counsel in the case) would have so supplemented its document responses.  Because it never received information indicating that its document responses were not, in fact, supplemented, it argues that no Rule 26(e) violation occurred, Rule 26(e) requiring that a party must "learn[]" of the insufficiency of its response.  The Court does not find Avid's argument persuasive.

To begin, Avid is charged with having notice of facts known to its attorneys. *See Ringgold Corp. v. Worral*, 880 F.2d 1138, 1141-42 (9th Cir. 1989). Given that at least Fish & Richardson knew that what documents had been submitted in response to Allflex's document requests, Avid is similarly charged with knowing that documents from the re-examination request and proceedings had not been turned over to Allflex.

Moreover, Avid kept receiving re-examination documents from its PTO counsel DLA Piper for two years, and yet not once did it flag those documents for its counsel or otherwise call attention to them. The responsive documents kept piling in the file cabinet and Avid did nothing in response. Avid's attempt to point fingers at Fish & Richardson (by saying but we told them and assumed they would handle it) is perhaps justification for why no supplementation occurred for the first three months after Avid became apprised of the reexamination (and also explains why Fish & Richardson also violated Rule 26(e)), but that does nothing to explain why after July 20, 2007, as Avid continued to receive documents from DLA Piper relating to the re-examination, those documents simply got stuffed away in a cabinet and were not placed in the hands of Allflex by way of Avid's counsel, Kirkland & Ellis. Avid knew that its attorneys at Kirkland & Ellis had not conducted an on-site document sweep at Avid prior to December, 2008. In the interim, the documents that demonstrated the inadequacy of its document responses continued to come into Avid's hands and at no point did Avid turn those documents over to its counsel in this matter. Even assuming that Avid could be justified in relying on its informing Fish & Richardson of the re-examination, that justification does not suffice for those documents from the re-examination proceedings that came into its possession *after* Fish & Richardson left. Those documents were responsive, and obviously had not been turned over to Kirkland & Ellis prior to Fish & Richardson's departure. Avid's failure to turn over these responsive documents in its possession was reckless.

Under these circumstances, Avid's position is analogous to that of the

sanctioned party in *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19 (S.D.N.Y. 1995).  In that personal injury action, the plaintiff, after the production of medical records to support his claim, visited his doctor for an examination, which led to the creation of additional medical records that were then kept in the doctor's possession.  Those documents were not produced as a supplement to the earlier production.  The record further showed that the lawyer knew that his client had visited the doctor.  Finding that both the lawyer and the client should be sanctioned, the district court observed that "the federal discovery rules place a duty on a party to turn over not only proper materials of which he is aware, but also those of which he reasonably ought to have been aware."  164 F.R.D. at 20.  In the context of this case, so long as the party knew of the re-examination proceedings, then it should have known about the re-examination documents itself and is subject to sanction for failing to supplement their responses.  Avid clearly falls within that category.

Accordingly, the Court finds, pursuant to Rule 37(c), that Avid likewise should be sanctioned for violating Rule 26(e).

C.    Kirkland & Ellis

At the end of the day, there is simply no evidence in the record demonstrating that Kirkland & Ellis knew of the re-examination proceedings.  Both Avid and Fish & Richardson have stated that they either did not tell or cannot recall telling Kirkland & Ellis about the re-examination.  None of the documentary evidence points to Kirkland & Ellis being told of the re-examination proceedings.  Although there is a great deal of volume of traffic between Kirkland & Ellis and Fish & Richardson during this two and half month period, nothing in that information exchange suggests that the subject of conversation was anything but that concerning the transferring of the case files between the firms.  Kirkland & Ellis was perhaps negligent in failing to inquire of its client whether there were more responsive documents, but the firm's failure to so inquire is explainable by the complete lack of any prosecution history regarding those patents since they were

issued more than a decade earlier in 1996 for the '017 patent and 13 years earlier in 1993 for the '409 patent.  Until 2007, neither patent had undergone re-examination.

Indeed, the Texas patent litigation (of which Kirkland & Ellis knew there had been a production of documents) was the first case in which the two patents had been the subject of a full-scale patent infringement action.  Given this sparseness in the respective patent's history, it is not unreasonable for Kirkland & Ellis to have simply thought the same relative quite in the respective patent's prosecution histories had and would continue.

Given its lack of knowledge of the re-examination proceedings, the Court finds that Kirkland & Ellis did not violate Rule 26(e), nor is sanctionable under section 1927.

D.    Sanctions

Allflex has submitted a bill of costs and fees it incurred in litigating the *Markman*-related proceedings in this case, totaling close to $800,000.  To the extent that any portion of those fees and expenses are levied as a sanction, the Court finds that, based on the present state of the record, the sanction should be apportioned between Avid and Fish & Richardson on a 80%/20% split, respectively. Given the length of time that elapsed with Avid in possession of the responsive documents, and yet unjustifiably taking no action to inform its counsel of their existence, and given the limited time in which Fish & Richardson were involved in this matter after learning of the re-examination proceedings, the Court finds that such an apportionment adequately assigns the proper amount of culpability between the two for the violations that occurred.

Sanctions under Rule 37(c) are allowed to the extent of the damages "caused by the failure"; here, the failure to supplement.  Until the re-examination proceedings are complete, it is unknown how much of the work Allflex has spent, and how much in costs and fees associated therewith have been wasted, and thus how much "damages" have been incurred as a result.  Conceivably, the re-

examination of the '017 patent could end with the patent being invalidated in whole or in part, or it may conclude with the claims in the patent being upheld.  If the former occurs, then, to the extent Allflex incurred wasted expenses and fees litigating those parts (or all) of the '017 patent that is invalided, perhaps those expenses and fees, or a portion thereof, should be imposed as a sanction against Avid and Fish & Richardson.  Moreover, if the invalidation of the '017 patent leads to a second re-examination proceeding being opened up on the '409 patent and it, too, is ultimately invalidated (in whole or in part), then perhaps the costs and fees Allflex incurred in litigating the same during the *Markman* proceedings in this case should be assessed as sanctions against Avid and Fish & Richardson.  By the same token, if both patents come out of re-examination as being upheld by the PTO, then the efforts Allflex has put in thus far in litigating those patents would not have been in vain.  Thus, should that circumstance occur, Allflex's fees and costs in litigating the *Markman* hearing before this Court would not be attributable as any damages "caused by the failure" to supplement.

In light of the uncertainties in the amount of damages that will or will not ultimately be shown to have been incurred by Allflex, the Court leaves it to the next judicial officer assigned to this case to determine the amount of Allflex's fees and costs, if any, that it incurred that should be assessed as sanctions in this case after the re-examination proceedings have been completed and the stay thereafter lifted.

DATE:  October 30, 2009

STEPHEN G. LARSON

UNITED STATES DISTRICT JUDGE